## Rhodes Appeal

*M. L. Harter*, for Commonwealth.

*Louis Cohen*, for appellant.

TROUTMAN, J., April 30, 1948.—Harold Rhodes, while operating his Studebaker sedan on a public highway known as Route No. 122 in North Manheim Township, Schuylkill County, Pa., at 9:35 o'clock on the evening of August 1, 1947, was apprehended by a member of the Pennsylvania State police. The police officer, after following Rhodes for a distance of approximately three miles, checked the speed at which the vehicle was being traveled as 65 miles per hour.

An information was filed by the officer before a justice of the peace in Schuylkill County, and Rhodes was charged with exceeding the speed limit which resulted in the imposition of a fine and costs, which were paid by Rhodes, under protest.

A hearing was held before a representative of the Secretary of the Department of Revenue on November 10, 1947, and on January 17, 1948, petitioner, Rhodes, was notified that his operating privileges were suspended for a period of 90 days commencing January 15, 1948.

On February 6, 1948, Rhodes presented his petition to this court for an appeal from the action of the Secretary of Revenue in suspending his operating privileges. The appeal was allowed and the court directed that it act as a supersedeas.

A hearing de novo was had before the court on this appeal on March 15, 1948. At this hearing, it was developed that the arresting officer, Private Edmund V. DeLeo, a member of the State police, on August 1, 1947, was patroling Route 122, south of Schuylkill Haven, when he saw the car operated by appellant traveling north of another car at what appeared to be a high rate of speed, and that he followed both cars for approximately three miles and checked them at a speed of 65 miles per hour. The testimony of the officer was to the effect that the speedometer on his patrol car had been tested for accuracy on July 5, 1947, at Station No. 27, Pottsville, Pa., by Russell Bradbury. The officer did not present a duly authorized certificate of the accuracy of the speedometer, giving as his reason that he was unable to find the record because it had been moved around and he did not have enough time to locate it. However, the officer testified that he was present when the car was inspected, that he had taken it to the station personally and that the speedometer of his patrol car was tested against a master speedometer for accuracy.

Counsel for appellant moved that the appeal be sustained because of the failure of the Commonwealth to present an official certificate showing the test of the speedometer for accuracy, whereupon counsel for the Commonwealth asked that a continuance be granted in order that the officer may produce the certificate, at which time the court indicated that rather than sustain the appeal he would grant the continuance, upon which occasion, counsel for appellant stated that he would like to go ahead with the case because the appellant could not afford to come down

to court another day. This was in effect a waiver of the objection. However, under the testimony, such a certificate was not necessary inasmuch as the officer testified that he had taken the patrol car to the testing station and had seen it tested for accuracy and described the test that was made. Such a certificate would have only served to corroborate the testimony of the officer.

In Commonwealth v. Parish, 138 Pa. Superior Ct. 593, 596-597, the Superior Court held that "The Commonwealth made out a prima facia case through the arresting officer who testified that he was present and observed the test as it was made, and by his further testimony that he followed the defendant on the highway for more than one quarter of a mile and, from a reading of his speedometer, determined that the defendant was driving his car at a speed in excess of the legal limit. There was no burden on the Commonwealth of proving the accuracy of the officer's speedometer except by competent proof that it had been 'tested for accuracy within a period of 30 days prior to the alleged violation'."

Appellant, Rhodes, being called as a witness, testified that he could not recall how fast he was traveling on that occasion, that he was traveling from Norristown and was not paying any attention to the speed, although he thought he was going about the speed limit, 50 miles per hour. On cross-examination he stated that it was possible that he was going faster than he had thought. Appellant has been driving a motor vehicle for about 12 years and had never been arrested before. He is employed as an assistant manager for the Jewel Tea Company, his territory including the area from Shamokin to Norristown, that his duties consist of hiring and training men, helping them to build routes and delivering orders, and that he cannot possibly carry on his employment without being able to use an automobile, nor can he afford to hire a driver.

428

This appeal is taken in pursuance to the authority in section 616 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §193. The language of the section clearly indicates that it is the duty of the court to hear de novo the witness of the Commonwealth and the witnesses of the licensee and, from the testimony taken, to determine anew whether the operator's license should be suspended: Commonwealth v. Funk, 323 Pa. 390, 399.

The jurisdiction conferred upon courts of common pleas by section 616 of The Vehicle Code does not authorize them to act either arbitrarily or capriciously with respect to the reinstatement of a suspended license; there must be a justifiable factual basis for the court's action in the premises: Bureau of Highway Safety v. Wright, 355 Pa. 307.

We have no doubt, under the testimony, that defendant was exceeding the speed limit permitted by The Vehicle Code for the operation of motor vehicles of the type operated by him on a public highway. Under section 1002(b), as amended, 75 PS §501 (b), the speed limit for appellant's vehicle on the open highway is 50 miles per hour. The Secretary of Revenue fulfilled his statutory duty by the suspension of the applicant's operating privilege. To reinstate this license would be a direct denial of our own findings, and we find no error in the suspension of the applicant's operating privilege by the Secretary of Revenue.

However, we are acquainted with the fact that on numerous occasions the Secretary of Revenue issues restricted licenses to those operators who are required to operate a motor vehicle for the purposes of their business or for the earning of a livelihood. The testimony conclusively shows that it is necessary for applicant to operate a motor vehicle in order to earn his livelihood and if he were deprived of his full operating privileges, it would work a serious hardship upon the

applicant and his family which might cause him to become a public charge. On several occasions this court has ordered the issuance of restricted licenses. See Commonwealth v. John Joseph Kovnas, 20 Northumb. 47.

Inasmuch as the Secretary of Revenue exercises the power to grant restricted operating privileges, and since the facts of this case conclusively show that applicant needs his operating privileges for the purpose of earning a living and preventing the possibility of applicant and his family from becoming public charges, we are of the opinion that a restricted license authorizing and permitting him to operate his motor vehicle during the period of suspension, for the purpose of conducting his business, should be issued.

## Order

And now, to wit, April 30, 1948, the appeal in this case is dismissed, and the order of the Secretary of Revenue suspending the operating privilege of the applicant for a period of 90 days is affirmed. The Department of Revenue, Bureau of Motor Vehicles, is directed to issue the applicant, Harold Rhodes, a restricted operator's license, permitting and authorizing the said Harold Rhodes to operate his motor vehicle on the highways during the period of suspension for the purpose of earning his livelihood and performing the duties of his employment as assistant manager for the Jewel Tea Company in the territory assigned to him by the said company and for that purpose only. This suspension of the operating privilege of the said Harold Rhodes shall be operative from the date notice of same is given by the Department of Revenue to Harold Rhodes and the issuance to him of the restricted operator's license herein mentioned. Costs to be paid by appellant. Let exceptions be noted and bills sealed for the Commonwealth of Pennsylvania and for appellant, Harold Rhodes.